[No. 8417.—In Bank.]
October, 3, 1882.

## IN THE MATTER OF THE ESTATE OF A. C. RAND.

OLOGRAPHIC WILL—STATIONER'S BLANK—REVOCATION OF PROBATE OF WILL—ESTATE OF DECEASED PERSONS—PORTIONS IN HANDWRITING OF DECEASED CAN NOT BE ADMITTED TO PROBATE AS HIS OLOGRAPHIC WILL.—An olographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form and may be made in or out of this State, and need not be witnessed. (C. C., § 1277.)

*Held:* 1. Where portions of the paper was printed in the form of a stationer's blank, and the vacant spaces therein were filled in the handwriting of the deceased, the instrument is not an olographic will. 2. The portion of the paper which was written by the deceased cannot be admitted to probate, as his olographic will as that would be in effect to change the statute, and make it read that such portions of an instrument as are in the handwriting of the deceased constitute an olographic will.

APPEAL, by George Babcock as executor, and Mary Ann Babcock as devisee, from judgment of the Superior Court of the County of Alameda. CRANE and GREENE, JJ.

Proceedings for the revocation of the probate of a will. Cyrus A. Pomeroy, as an heir at law on the twenty-ninth day of September, 1881, filed a petition for the revocation of the probate, on the ground that the paper was not the olographic will of the deceased. Issue having been joined, and after trial the Court below found the following facts:

1. That the document filed in this Court on the twenty-ninth day of June, A. D. 1881, by George Babcock, which document was, on the eleventh day of July, A. D., 1881, admitted to probate as the last will and testament of Augustus C. Rand, deceased, and letters testamentary issued thereon, was not

subscribed by said deceased in the presence of any attesting witnesses, nor did any witness sign his name thereto as a witness, in any manner, or at any time.

2. That said document, so admitted to probate as the last will and testament of Augustus C. Rand, deceased, as aforesaid, is partly in print and partly in the handwriting of said deceased, and said written part is wholly in the handwriting of said deceased, and that said deceased, with his own hand, subscribed his name to said will, and at the end thereof.

3. That said document so admitted to probate, as aforesaid, in this Court, as the last will and testament of said deceased, was executed on the day it bears date, to wit, on the twentieth day of October, 1877, as his last will and testament, and said instrument was by him declared to be his last will and testament, and the said George Babcock, named as executor, was informed by said deceased where said instrument would be kept and found after the said Rand died.

4. Said will was found by said George Babcock, after the death of said deceased, in the place indicated, and inclosed in an envelope, on which was indorsed in the handwriting of said deceased, the words: "The last will and testament of Augustus C. Rand."

5. That said petitioner, Cyrus A. Pomeroy, is the sole surviving child of Harriet Rand Pomeroy, deceased, who was a sister of Augustus C. Rand, deceased, and who died before the date of the death of said Augustus C. Rand, deceased, leaving her surviving the said Cyrus A. Pomeroy; that at the date of filing of said petition by said Cyrus A. Pomeroy he was over the age of twenty-one years.

An order was made revoking the probate.

*Pillsbury & Titus* and *J. B. Crockett,* for Appellants.

The printed part of said instrument may be rejected as surplusage, and that part thereof which is admitted to be in the handwriting of said deceased makes a complete olographic will, written, dated and signed by the hand of the testator.

Upon the first point the appellants contend that the instrument having been admitted to probate as an olographic will, every intendment was in favor of the judgment admitting it to probate, and the validity of the will, and it was incumbent

on the contestant to show that it was not written, dated and signed by the hand of the testator.

It was not sufficient to show that the will was in part printed, for writing includes printing. (C. C. P., § 17; C. C., § 14.) "It has long been settled that when the statute requires the formalities of writing, printing is a sufficient compliance." (*Temple* v. *Mead,* 4 Vt. 536; *Henshaw* v. *Foster,* 9 Pick. 312.) If, then, the part of the will which is in print was printed by the hand of the testator, and the part which is in writing is also in his hand, the provisions of Section 1277 of the Civil Code were complied with, and the instrument is an olographic will—for, whether the letters were formed with type or with a pen, is not material; if done by the hand of the testator, the law is satisfied.

It was not shown by the contestant that the printed part of the will was not printed by the testator, and for this reason the testimony failed to show that the probate of the will should have been revoked.

Under the second point the appellant contends that the printed part of the instrument may be rejected as surplusage; and that part which remains, and which is admitted to be in the handwriting of the testator, constitutes an olographic will. It is one of the maxims of jurisprudence that superfluity does not vitiate. (C. C., § 3537.)

If, then, that part of this instrument which is in print is superfluous, it will not vitiate the will. Is the printed part superfluous? If we examine this printed matter, it is found to contain a recognition of the existence of a Supreme Being, a recital of the testator's place of residence, a reference to his age, and a statement that he is not under restraint, or the influence of any person; and, being in this condition, he makes his last will and testament, in which he declares: First—That he wants his body decently buried, without undue ceremony, but with regard to his condition in life, and the circumstances of his estate. And, secondly—He wants his executor to pay his funeral expenses, and expenses of last illness, as soon as he has funds to do it. Lastly—A part of the appointment of the executor is contained in the printed matter. Is any of this matter necessary to the instrument in order that its testamentary character may be established?

This question may be answered by considering whether, if the testator had taken a blank sheet of paper—a piece on which there was neither printing nor writing—and had written thereon the words which he wrote on the blank used, dated it in the manner in which it is dated, and signed his name at the end thereof, as he did in this case, on proof *aliunde* of the testamentary intent, would the Court have admitted it to probate as an olographic will? Would it have constituted an olographic will within the meaning of Section 1277, C. C.?

A strict construction of this section of the Civil Code requires three things to concur in order to constitute an olographic will: 1. It must be written. 2. It must be dated; and, 3. It must be signed by the hand of the testator. It need not appear on its face to be testamentary; its testamentary character may be shown *aliunde*. (*Clarke* v. *Ransom*, 50 Cal. 595.)

But the instrument executed by deceased bears upon its face, without reference to the printed part, the unmistakable evidence of a testamentary intent. It was inclosed in an envelope on which was indorsed the words, "The Last Will and Testament of Augustus C. Rand." It was otherwise declared by him to be his last will and testament. By rejecting the printed part of the instrument, the will is without appointment of an executor. It is not necessary that the testator nominate his executor. (*Estate of Barton*, 52 Cal. 538.)

What element, then, is lacking to entitle the instrument to probate as an olographic will? The right to reject portions of testamentary instruments from the probate, because superfluous, because of fraud, duress, or undue influence, because of incapacity of the testator, or because lacking the requisite formalities, and to give testamentary intent to the unobjectional parts, is a doctrine which is well established both in England and in this country. The following are some of the cases in which it finds recognition and support: 1 Redfield on Wills, §§ 181, 518; *In re Duane*, 8 Jurist (N. S.), 752; *In re Harris*, 1 Sw. & Tr. 536; 3 Redfield on Wills, 52; *Lord Trimlestown* v. *D'Alton*, 1 Dow. & C. 86; *In re Adams*, L. R. 2 P. & D. 367; *Succession of Roth*, 31 La. Ann. 317. In this last case there was one attesting clause: Civil Code, § 1272.

*Gray & Haven*, for Respondent.

Appellant contends "that the printed part of the instrument may be rejected as surplusage; and that part which remains, and which is admitted to be in the handwriting of the testator, constitutes an olographic will." We reply:

First. The whole instrument was offered by appellant, and the whole instrument was admitted to probate as the will of deceased, and the whole instrument must stand or fall. In case of contest after probate, " if, upon the proofs of the parties, the Court shall decide that the will is for any reason invalid, or that it is not sufficiently proved to be the last will of the testator, the probate must be annulled or revoked." (Code Civ. Proc., § 1330.) There is no authority for carving out a portion of the instrument which has been admitted to probate, and continuing the powers of the executor under such portion. It is not necessary for this Court to determine what would have been the proper practice if the appellant had offered for probate those portions only of the instrument which were written by the deceased as his olographic will.

To the foregoing we add a reference to the following authorities: *Clarke* v. *Ransom*, 50 Cal. 602: " The instrument propounded, being wholly in the handwriting of the testatrix, was executed with the requisite formality;" *Estate of Martin*, 58 Cal. 530: "The Legislature has seen fit to require three things to concur for the execution of an olographic will, viz., that it be written, dated, and signed by the hand of the testator. We are not at liberty to hold that the Legislature intended any one of these requirements to be of greater or less importance than the others. If we may omit one, why not either of the others? It is subject to no other form. It is subject to the form prescribed;" *Pena* v. *New Orleans*, 13 La. Ann. 86: "Being written, signed, and dated entirely by the hand of John McDonough, it is valid as his olographic will;" *Succession of Myra Clark*, 11 id. 128: "The olographic will must be entirely written, dated, and signed by the testator. Without the observance of these requirements the will could not exist as such."

In *Williams* v. *Hardy*, 15 La. Ann. 286, the proposed will was declared a nullity, because it was not wholly written by

the hand of the testator. What portion was not so written does not appear.

We respectfully submit that the counsel for appellant lose sight of the only question before the Court; viz., does the proposed will meet the statutory requirements? Is it a "will?" The statute provides that "every will, other than a nuncupative will, must" have certain formalities. In this case the testator did not comply with any statutory form. The paper is not attested; it is not wholly written—"olographic." There is no date. The printed part of the date cannot be rejected as surplusage, because it was intended by the testator as part of the date, and it is a part of the date. The date must be "wholly written."

To reject the printed part of the instrument as surplusage would be to make a will different from the will intended by the deceased. To adopt the printed portion as a part of the deceased's "writing" would be to disregard, not only the statutory requirement that the olographic will must be "entirely written," but also the statutory distinction between written words and printed words.

Section 1862 of our Code of Civil Procedure expressly provides that "when an instrument consists partly of written words and partly of a printed form, and the two are inconsistent, the former controls the latter." If the courts determine that a testator may adopt a printed form as his writing, and as part of his olographic will, how can they, in case of inconsistent provisions in the printed and written portions of the will, ascertain the intent of the testator from the whole instrument? Under the direction of the statute, a part of the will of the testator, if printed, and inconsistent with some written portion, is excluded from consideration. But in a will every part, every word, is to be given equal weight for the purpose of determining the testator's intent. (1 Redf. on Wills, p. 421, § 14.)

No matter how completely the testator may adopt the printed portion as his writing, he does not thereby make it writing in the view of section 1862 of the Code of Civil Procedure. The instrument is partly printed and partly written, and the Court must give a controlling effect to the "written words." · The evident and clearly manifested intent

of the legislature in providing for olographic wills—"entirely written by the hand of the testator himself "—was to avoid any possible conflict in construction, as well as to effectually guard against fraud in the probate.

The COURT:

A paper, of which the following is a copy, was admitted to probate as an olographic will, viz.:

"*In the Name of God. Amen.*

"*I,* Augustus C. Rand, *of the City and County of San Francisco, State of California, of the age of* seventy-six *years, and being of sound and disposing mind, and not under any restraint or the influence or representation of any person whatever, do make, publish, and declare this my last will and testament in manner following, that is to say:*

"*First. I direct that my body be decently buried, without undue ceremony or ostentation, but with proper regard to my station and condition in life and the circumstances of my estate.*

"*Secondly. I direct that my executor, hereinafter named, as soon as he has sufficient funds in his hands, pay my funeral expenses and the expenses of my last sickness.*

"Thirdly. I will and bequeath to Mary Ann Babcock, wife of George Babcock, of Oakland, County of Alameda, State of California, all the right, title, and interest belonging to me in a piece of real estate situate in Brooklyn Township, County of Alameda, State of California, being known as the Mc-Cracken ranch, consisting of about sixty-five (65) acres, together with all the improvements and additions that I have made thereunto.

"Also, all my right, title, and interest in a house and lot in the City and County of San Francisco and State of California, known as No. 9 Second avenue, with all the improvements and appurtenances thereunto belonging.

"*Lastly. I hereby appoint* George Babcock, of Oakland, County of Alameda and State of California, *the executor of this my last will and testament, hereby revoking all former wills by me made.*

"*In witness whereof, I have hereunto set my hand and seal*

*this* twentieth *day of* October, *in the year of our Lord one thousand eight hundred and* seventy-seven.

AUGUSTUS C. RAND.

" *The foregoing instrument, consisting of* —— *page besides this, was, at the date thereof, by the said* —— *signed and sealed and published as and declared to be* —— *last will and testament, in presence of us, who, at* —— *request, and in* —— *presence and in presence of each other, have subscribed our names as witnesses thereto.*

——————

*Residing at*——

——————

*Residing at*—— "

The portions of the paper in italic were printed in the form of a stationer's blank, and the portions in roman letters were in the handwriting of the deceased, filling the vacant spaces therein. In due time an heir of the deceased moved for revocation of the probate, on the ground that the paper was not an olographic will, it not being entirely in the handwriting of the deceased, and the Court granted the motion. The section of the Civil Code referring to this subject, Section 1277, is as follows:

"An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this State, and need not be witnessed."

The paper before us was not entirely written by the hand of the deceased. Portions of it were printed. The Legislature has seen fit to prescribe forms requisite to an olographic will, and these forms are made necessary to be observed. It was strenuously urged before us that the portions of the paper which were written by the deceased should be admitted to probate, omitting the printed portions. We are not at liberty to so hold. We should, thereby, in effect, change the statute, and make it read that such portions of an instrument as are in the handwriting of the deceased constitute an olographic will. The instrument, in its entirety, is before us. It was not entirely written by the hand of the deceased.

Order affirmed.