[L. A. No. 8444.   In Bank.—September 11, 1925.]

In the Matter of the Estate of JOSEPHINE BERNARD, Deceased.   MARY E. POCHIN et al., Respondents, v. JESSIE BERNARD DONAHUE et al., Appellants.

[1] WILLS—SIGNATURE OF DOCUMENT—INTENT OF MAKER—SUFFICIENCY OF EXECUTION.—Wherever the signature in a document offered for probate is placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself; and if it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution if nothing to the contrary appears, but, if placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should serve as a token of execution, and if such inference thus appears, the execution may be considered as proven by such signature.

[2] ID.—SIGNATURE IN THE EXORDIUM—INSUFFICIENT EXECUTION.—A document testamentary in character and wholly in the handwriting of the deceased, except for the name of the city where such document was written, is not admissible to probate as the will of the deceased, where there is no signature at the end thereof, the signature of the deceased appearing only in the exordium, and there is nothing in any other part of the document to indicate affirmatively or by necessary implication that such signature was intended to be or was adopted as the final executing signature in authentication of or in execution of the document as a completed testamentary act; and the fact that such document begins with the words and figures, "The following 4 sheets of paper included," does not warrant the inference that the deceased intended such signature in the exordium to be authentication of the document as her will.

[3] ID.—USE OF PRINTED LETTER-HEAD—INVALID HOLOGRAPHIC WILL.—Where a document testamentary in character, written on hotel stationery in which the name of the city is printed on the date line, is wholly in the handwriting of the maker, except that, after a beginning clause reading, "The following 4 sheets of paper included," which is written immediately above the date line, the word

1.   See 28 R. C. L. 119.

3.   Writing name in body of will as sufficient signature to holographic will, notes, 29 L. R. A. (N. S.) 63; 46 L. R. A. (N. S.) 552; L. R. A. 1917D, 632. See, also, 28 R. C. L. 163.

"included" being carefully adapted to the alignment of the printed name of the city, and the day, month, and year being written with exactitude on the same line with and directly following the printed name of the city, and such beginning clause is a material part and parcel thereof, such document does not meet with the requirement that a holographic document, to be given legal effect as a will, must be, among other things, entirely written by the hand of the testator himself.

[4] ID.—DUE EXECUTION—QUESTION OF FACT—EVIDENCE—FINDING—APPEAL.—The due execution of a will is a question of fact, and its determination by the trial court must be sustained unless that determination is unsupported by the evidence.

(1) 40 Cyc., p. 1105, n. 13, p. 1106, n. 19.    (2) 40 Cyc., p. 1105, n. 13.    (3) 40 Cyc., p. 1129, n. 7, p. 1131, n. 21.    (4) 40 Cyc., p. 1358, n. 75.

APPEAL from an order of the Superior Court of Los Angeles County revoking the probate of an alleged will. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stewart & Stewart for Appellants.

Merriam, Rinehart & Merriam for Respondents.

LENNON, J.—This appeal is taken from an order revoking the probate of a certain document, holographic in form, theretofore admitted to probate as the last will and testament of Josephine Bernard, deceased. The order of the lower court revoking the probate of the alleged will rests upon two grounds: (1) That it was not signed by the decedent; (2) that it was not entirely written by the decedent as required by section 1277 of the Civil Code.

The document in question consists of four sheets of hotel stationery. The first page, as it appears in a photostatic copy incorporated in the record, is as follows:

"The following 4 sheets of paper included, Long Beach, California, Oct. 12, 1918.
"I, Josephine Bernard of the City and County of Denver, Colo. do hereby declare this to be my last will and testament."

This is followed by a number of dispositive clauses and then the document terminates abruptly near the middle of the last page in the following language:

> "To her husband Herbert Donahue ruby and diamond stick pin."

It is a conceded fact in the case that the document in question was in the handwriting of the decedent save the words in the date line, "Long Beach, California," which were printed. The only question here presented is whether the document is entirely written and signed by the hand of the decedent.

[1] The rule governing what constitutes a sufficient signing of a holographic will is enunciated in *Estate of Manchester*, 174 Cal. 417 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358], where the only signature in the document offered for probate was in the opening clause, and commenced in terms similar to those of the document in the instant case and ended without any signature other than the one at the beginning. There was nothing on the face of the will to indicate that the testatrix intended to adopt the signature in the introduction as her signature in execution of the will. The court held: " . . . a document in which the name of the person making it appears only in the beginning thereof, and by way of recital to designate that person as the maker . . . cannot be said to have been signed by the maker." On this subject the court laid down the general rule in the following language: "The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended· as an execution if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature."

This rule was approved in the *Estate of McMahon*, 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669], and in *Estate*

*of Streeton*, 183 Cal. 284 [191 Pac. 16]. It was affirmed in
*Estate of Hurley*, 178 Cal. 713 [174 Pac. 669]. In *Estate
of McMahon, supra,* the signature was in the exordium of
the will, which was followed by a number of dispositive
clauses and concluded with the following: "I do hereby
publish and declare the foregoing, entirely written, dated
and signed by my own hand, to be my last will and testa-
ment, this second day of January, 1912." No signature fol-
lowed nor was any to be found in any other part of the
will except in the exordium. It was held, nevertheless, that
this was a declaration of the intent of testatrix to adopt the
name appearing in the exordium as her signature and ac-
cordingly the validity of the will was upheld. In *Estate of
Streeton, supra,* the court said, after reiterating the rule
above stated in *Estate of Manchester:* "The name of the
testator appears in a blank space, disconnected from the
rest of the written matter both as to location and meaning.
Had the name appeared in the exordium, the logical infer-
ence from the context would probably have been that it was
intended merely to dentify the person making the will, and
additional facts might have been necessary to raise the
inference that it was also intended as a signature in the ex-
ecution of the will. (*Estate of Hurley,* 178 Cal. 713 [174
Pac. 669]; *Estate of McMahon,* 174 Cal. 423 [L. R. A.
1917D, 778, 163 Pac. 669].)" The same rule was applied in
the *Estate of Hurley, supra,* as the test in determining
whether an alleged will had been signed within the mean-
ing of section 1277 of the Civil Code. In that case, in the
document under consideration, as in the instant case, the
name of the decedent appeared only in the introductory
clause, and there, as here, the instrument closed abruptly
without anything to indicate upon the face of the document
that the signature in the exordium was adopted or intended
to be adopted as the executing signature. Said the court
in the case last cited: " . . . the signature appears in the
opening statement of the paper, but there is nothing in the
document or in the closing paragraph to indicate that the
testatrix intended to adopt that signature as the executing
signature of the will. Indeed, the contrary may be inferred
from the fact that the will terminates without even a punc-
tuation mark, thereby indicating that testatrix ceased writing
before she had completed declaring her intention, and that

she did not regard the document as a completed will. But the contrary inference need not appear. In the absence of anything on the face of the will to raise the inference that the name in the exordium was intended as a signature in the execution, the holographic document cannot be deemed a valid will.''

[2] Marking and measuring the document in question by the above stated ''true rule,'' which has been so often reaffirmed and approved by this court, there is no escape from the conclusion, it seems to us, that there was no executing signature sufficient to give legal effect as a will to the document. There is no signature at the end of the document, where it is the common custom to place a signature intended for authenticating and indicating the completion of an instrument, The signature of the decedent appears only in the exordium, and there is nothing in any other part of the alleged will to indicate affirmatively or by necessary implication that the signature was intended to be or was adopted as the final executing signature in authentication of or in execution of the document as a completed testamentary act. The obvious and natural inference to be drawn from the position of the name of the decedent in the alleged will is that it was intended merely as *descriptio personae*, and, in the absence of anything affirmatively appearing on the face of the will itself tending to show that such signature was intended to authenticate it, this conclusion is inevitable. This is so notwithstanding the fact that decedent wrote at the very beginning of the document the words and figure, ''The following 4 sheets of paper included.'' These words indicate merely that decedent contemplated making the document her will, but they do not, standing alone, warrant the inference of an intent to adopt the signature in the exordium as her executing signature. Nor are they so intimately connected with the context of the document, as was the situation in the *Estate of McMahon, supra,* as to justify the inference that she intended such signature to be in authentication of the document as her will. The abrupt termination of the document near the middle of the last page is a strong indication of decedent's intent to do something more in order to make it a complete will. The last clause being, in all general respects, similar to the preceding dispositive clauses manifests that the writer did not intend to terminate the

document finally and definitely at that particular point, but, rather, indicates that something additional was to be done and necessarily compels the conclusion that decedent had no intention of adopting the name written in the opening clause of the will as the executing signature to her final testamentary act.

[3] In setting aside the order admitting the will to probate the lower court did so upon the additional ground that it was not entirely written by the hand of the decedent. We are, then, upon this phase of the case, called upon to determine whether the document was executed in compliance with the essential requirements of the law. A holographic document to be given legal effect as a will must be, among other things, "entirely written, . . . by the hand of the testator himself. It is subject to no other form." (Civ. Code, sec. 1277; *Estate of Rand,* 61 Cal. 468 [44 Am. Rep. 555]; *Estate of Billings,* 64 Cal. 427 [1 Pac. 701]; *Estate of Plumel,* 151 Cal. 77 [121 Am. St. Rep. 100, 90 Pac. 192]; *Estate of Francis,* 191 Cal. 600 [217 Pac. 746]; *Estate of Thorn,* 183 Cal. 512 [192 Pac. 19].)

In *Estate of Thorn, supra,* the document admitted to probate was, in all of its essential portions, written in the handwriting of the decedent except the word "Cragthorn," which was inserted in two different places in the body of the document with a rubber stamp. This court held that the alleged will was not executed in accordance with the mandatory requirements of the statute and was for that reason invalid. The court stated: "If the words 'Cragthorn' stamped with a rubber stamp upon this document, or either of them, constitute a part of the attempted will, it seems obvious that the will is not 'entirely written by the hand of the testator himself,' and therefore does not measure up to the mandatory requirements of the statute."

That decision governs and controls in the determination of the validity of the document now before us. The instrument in the present case, it seems to us, does not fulfill the statutory requirements, in that it is not "entirely written . . . by the hand of the testator himself." (Civ. Code, sec. 1277.) It will be noted that the clause, "The following 4 sheets of paper included," written at the top of the first page, is written immediately above the date line, and the written word, "included," is carefully adapted to the align-

ment of the printed words, "Long Beach, California," on the date line of the letter-head. The day, the month, and the year are written with exactitude on the same line with and directly following the printed name of the place where the alleged will was executed. The printed words are incorporated in and doubtless were intended to be made a part of the heading of the document. The care with which the date has been placed upon the precise line with the printed words indicates that the words immediately preceding the date must have been intended to be made a part of the document as the name of the place of the execution of the document. Moreover, this construction, based upon the relative position of the words, is supported by the juxtaposition of the written word "included" and the printed words "Long Beach, California," which are in a direct and immediate line thereto. It thus appears that decedent not only wished to make the date a part of the document, but to make, also, the printed portion, designating the place of the making of the document, an essential part of the document. Unless it can be said that the clause at the very top of the will, which reads, "The following 4 sheets of paper included," is a material part and parcel of the will, then there is nothing on the face of the document which in anywise indicates that the testator had executed a completed instrument; and if we take that clause to be a material part of the will, then we are confronted with the fact that the printed words "Long Beach, California," are likewise a material part and parcel of the will, and therefore it cannot be said, in keeping with the rule enunciated in the *Estate of Thorn, supra,* that the will was entirely written by the hand of the testator. This being so, we perforce reach the conclusion that the alleged will was not executed in accordance with the requirements of the law.

[4] The due execution of a will is a question of fact, and its determination by the trial court must be sustained unless that determination is unsupported by the evidence. (*Estate of Streeton,* 183 Cal. 284 [191 Pac. 16]; *Ryder* v. *Bamberger,* 172 Cal. 799 [158 Pac. 753]; *Ridecut* v. *City of Los Angeles,* 185 Cal. 434 [197 Pac. 74].) The order appealed from is affirmed.

Lawlor, Acting C. J., Waste, J., Richards, J., Seawell, J., Shenk, J., and Houser, J., *pro tem.,* concurred.